TITANIUM METALS CORPORATION OF AMERICA, Appellant, v. CLARK COUNTY DISTRICT BOARD OF HEALTH AIR POLLUTION CONTROL HEARING BOARD, Respondent.

No. 13889

May 23, 1983                       663 P.2d 355

*Jones, Jones, Bell, Close & Brown,* and *Bruce K. Collmar,* Las Vegas, for Appellant.

*Colucci, Minagil & Aurbach,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

In this appeal from a district court order, appellant Titanium Metals Corporation of America (Timet) argues that the court erred by affirming an administrative determination that Timet is liable for certain atmospheric emissions. We agree.

On May 28, 1981, the Air Pollution Control Division of the Clark County District Board of Health (APCD) charged Timet with having violated section 26 of the Air Pollution Control Regulations of the Clark County District Board of Health (the Regulations).[1] The charge resulted from three observed atmospheric emissions that occurred May 13, 16, and 17, 1981.

The APCD Hearing Board (the Board) held a hearing on June 10, 1981. Timet stipulated to the three emissions and their opacity, but sought to excuse the emissions under section 25 of the Regulations.[2]

---

[1] Section 26 of the Regulations provides in part:

26.1    A person shall not discharge into the atmosphere, from any single source whatsoever, except from an incinerator, any air contaminants for a period or periods aggregating more than three (3) minutes in any sixty (60) minute period, which is:

26.1.1    Of such opacity to a degree equal to 20 percent obscuration or greater.
. . . .

[2] Section 25 of the Regulations provides that emissions in excess of the limits set out in the Regulations constitute violations thereof unless:

. . . .
25.1.2    Such emissions resulted from a Malfunction. In determining whether or not a Malfunction has occurred, the Control Officer or Hearing Board may utilize the following guidelines. The burden of proof shall be upon the operator.

1) The air pollution control equipment, process equipment, or processes involved in the incident were at all times maintained and operated in a manner reasonably consistent with good practice for minimizing emissions;

2) Repairs were made in an expeditious fashion when the Operator knew or should have known that applicable emission limitations were being exceeded. The Operator must have employed his best efforts to use off-shift labor and overtime to insure that such repairs were made as expeditiously as possible;

3) The amount and duration of the excess emissions were minimized in a manner reasonably consistent with good practice during periods of such emissions;

4) The excess emissions were not part of a historical pattern indicative of inadequate design;

5) No additional course of action other than that actually taken could reasonably have been implemented by the Operator.

The Board issued a decision that excused the first emission on the basis of an equipment malfunction, but fined Timet for the two subsequent emissions. Timet filed a petition for judicial review of the Board's decision. The district court affirmed the decision of the Board, and this appeal followed.

The facts are undisputed and can be recited summarily. On May 13, 1981, a transformer serving certain air pollution control equipment at the Timet plant failed suddenly and without warning. Timet's personnel immediately began trying to repair or replace the transformer, and a replacement was located, installed and in operation by May 20, 1981. In the time between the transformer failure and the installation of the replacement, however, three emissions occurred that were in excess of the standards set out in section 26 of the Regulations.

On appeal of the decision of an administrative agency, the function of this court is identical to that of the district court: to review the evidence presented to the agency in order to determine whether the agency acted arbitrarily or capriciously, thus abusing its discretion. Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 607 P.2d 581 (1980).

The testimony before the Board was offered by Timet's representatives. They indicated that the failed transformer was a single large and expensive piece of equipment that had been properly maintained and for which no back-up was normally required. The testimony also revealed that Timet's operations were set up to be continuous and that the by-products of each area of production were internally recycled, so that a shutdown of one area was impossible without causing repercussions throughout the plant. The Board's conclusion was apparently predicated on its acceptance of this testimony, since the first emission occurred about seven hours after the transformer failed. The Board's conclusion that the emission on May 13, 1981, was the result of a malfunction is apparently predicated on the acceptance of the Timet testimony.

The only significant distinction between the May 13, 1981, emission and the two later emissions was the passage of, respectively, three and four days. The Board concedes that "Timet acted as quickly as possible in replacing the transformer." This concession satisfies the only remaining guideline for determining whether a malfunction has occurred, and whether an otherwise violative emission is therefore excused. Regulation 25.1.2(2).

The Board's conclusions and concessions indicate that Timet acted in full conformity with the guidelines set out in section

25.1.2 of the Regulations, and the Board found that a malfunction had occurred. Since the Board made no finding that Timet did not comply with the guidelines either before or after the transformer failure, we are forced to conclude that the Board's imposition of fines for the May 16 and 17, 1981, emissions constituted an arbitrary application of its Regulations. This was an abuse of discretion, and the Board's decision should therefore be reversed. *See* Turk v. Nevada State Prison, 94 Nev. 101, 575 P.2d 599 (1978); Kochendorfer v. Board of Co. Comm'rs, 93 Nev. 419, 566 P.2d 1131 (1977).

Accordingly, the district court order affirming the decision of the Board is reversed.