DALE LANGMAN, Appellant v. NEVADA ADMINIS-TRATORS, INC.; HORSESHOE HOTEL AND CASINO; and STATE OF NEVADA DEPARTMENT OF ADMINISTRATION, Respondents.

No. 28241

February 26, 1998            955 P.2d 188

---

*Craig P. Kenny & Associates,* Las Vegas, for Appellant.

*Marquis & Aurbach* and *Dale A. Hayes,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### FACTS

On May 13, 1988, appellant injured his lower back in the

course and scope of his employment at the Horseshoe Hotel and Casino ("Horseshoe"). He underwent surgery for posterior lumbar interbody fusion, total disc replacement, and autogeneous graft on December 21, 1989.

Appellant's claim for workers' compensation was accepted, and appellant was referred for a permanent partial disability ("PPD") rating on March 7, 1990. Following an examination, appellant received a 13.5% PPD rating for loss of range of motion and significant disc disease. The examining physician did not note any indication that the lumbar fusion or other parts of the 1989 surgery had been unsuccessful. On April 16, 1990, appellant elected to receive a lump sum award of $23,238.87 based on his 13.5% PPD rating.

On July 14, 1994, appellant was working around his swimming pool when the pool filter exploded, striking appellant in the chest. Appellant was sent flying ten to fifteen feet through the air and landed on his back. He complained of pain in his lumbar spine, radiating down his left leg, and underwent a second surgery for an instrumented fusion and an iliac crest bone graft on August 8, 1994. Appellant's treating physician, Dr. Frances D'Ambrosio, concluded that appellant's May 13, 1988 industrial injury was the primary cause of the subsequent injury because his back had not properly fused after the first surgery.

On October 31, 1994, based on Dr. D'Ambrosio's diagnosis, appellant requested the reopening of his claim. The third party administrator for the Horseshoe reopened the claim for medical investigation only, and referred appellant to Dr. David Oliveri for an independent medical examination on December 22, 1994. In his report, Dr. Oliveri made no reference to the success or failure of the 1989 lumbar fusion. Instead, Dr. Oliveri found that the July 14, 1994 injury "represents a new injury with a new disk herniation . . . that was not present at the time of the original MRI scan in 1989." Dr. Oliveri stated that "[a]ny increase in his level of disability at this point is not industrially related and is, in my opinion, primarily related to the non-work-related injury of 7/14/94." Accordingly, Dr. Oliveri concluded that "[a]ll treatment rendered for [appellant's] current complaints that have resulted since July of 1994 should be rendered on a nonindustrial basis."

On December 2, 1994, the third party administrator denied the reopening of appellant's claim; the denial was affirmed by the hearing officer on January 12, 1995, following a hearing on the merits. The case came before the appeals officer on April 17, 1995, and the evidence presented to the appeals officer included Drs. D'Ambrosio's and Oliveri's reports and appellant's medical

records. The evidence also included a report from Dr. James Thomas, Jr., who conducted a medical review of appellant's records on February 21, 1995, without examining appellant. In his report, Dr. Thomas stated that in his opinion, appellant's 1989 lumbar fusion never completely healed, leaving the spinal segment vulnerable to the second injury in 1994. Accordingly, Dr. Thomas concluded that there was "a definite relationship" between appellant's 1989 surgery and his need for surgery in 1994.

In a decision filed May 19, 1995, the appeals officer affirmed the denial of appellant's request to reopen his claim. The appeals officer found that "[t]he explosion of the pool filter on July 14, 1994, and not the industrial accident on May 13, 1988, was the primary cause of Claimant's new injury." The appeals officer further found that in light of the mechanics of the July 14, 1994, accident, the pre-closure medical reports, and Dr. Oliveri's medical investigation, "Dr. D'Ambrosio's contention that the failed fusion and re-herniation at L5-S1 was primarily related to the industrial accident is not credible." Accordingly, the appeals officer concluded that appellant had "failed to meet his burden of proof that his physical condition, subsequent to the July 14, 1994, non-industrial accident, primarily resulted from the industrial injury of 1988," and that appellant was thus not entitled to reopen his claim pursuant to NRS 616.545.

In an order filed January 9, 1996, the district court denied appellant's petition for judicial review and affirmed the appeals officer's decision. The district court concluded that the decision was supported by substantial evidence in the record and not affected by errors of law. This appeal followed.

## DISCUSSION

On appeal, appellant contends that the appeals officer erred by applying the wrong statutory standard with respect to reopening his claim. Specifically, appellant maintains that the appeals officer should have applied the statutory standard in effect at the time his first industrial injury arose, not the statutory standard in effect when he sought to reopen his claim.

### Standard of review

As a general rule, this court's role in reviewing an administrative decision is identical to that of the district court: to review the evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and was thus an

abuse of the agency's discretion. Titanium Metals Corp. v. Clark County, 99 Nev. 397, 399, 663 P.2d 355, 357 (1983); NRS 233B.135. Because this case concerns the construction of a statute, however, independent review is necessary. "The construction of a statute is a question of law, and independent appellate review of an administrative ruling, rather than a more deferential standard of review, is appropriate." Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993) (citing Nyberg v. Nev. Indus. Comm'n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984); American Int'l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983)).

*Whether the applicable burden of proof for reopening a claim under former NRS 616.545 (now NRS 616C.390) is determined by the date of the original industrial injury or by the date of the request to reopen the claim*

Appellant contends that the district court erred in affirming the appeals officer's decision to deny the reopening of appellant's claim because the appeals officer's decision is affected by an error of law. Specifically, appellant contends that the appeals officer applied the burden of proof for reopening a claim under the post-1993 version of NRS 616.545, instead of the less stringent version of NRS 616.545 in effect prior to the 1993 amendments.[1] According to appellant, when he accepted his lump sum payment for PPD in 1990, he did so with the understanding that he would be able to reopen his claim in accordance with the provisions of NRS 616.545 then in force. Thus, appellant maintains that the appeals officer erred by applying the amended version of NRS 616.545 to his request to reopen his claim.

Prior to 1993, NRS 616.545 provided in pertinent part:

1. If a change of circumstances warrants an increase or rearrangement of compensation during the life of an injured employee, application may be made therefor. The application must be in writing and accompanied by the certificate of a physician . . . showing a change of circumstances which would warrant an increase or rearrangement of compensation . . . .

2. After a claim has been closed, the insurer . . . may authorize the reopening of the claim . . . . The application must be accompanied by a written request for treatment from

---

[1]For the sake of convenience, this opinion will refer to former NRS 616.545 (now codified as NRS 616C.390) as NRS 616.545.

the physician . . . certifying that the treatment is indicated by a change in circumstances and is related to the industrial injury sustained by the claimant.

In 1993, NRS 616.545 was substantially amended as follows:

1.   If an application to reopen a claim . . . is made in writing more than 1 year after the date on which the claim was closed, the insurer shall reopen the claim if:

(a) A change of circumstances warrants an increase or rearrangement of compensation during the life of the claimant;

(b) The *primary cause* of the change of circumstances is the injury for which the claim was originally made; and

(c) The application is accompanied by the certificate of a physician . . . showing a change of circumstances which would warrant an increase or rearrangement of compensation.

(Emphasis added.)

Neither of these versions of NRS 616.545 indicates whether the controlling date for application of the statute is the date of the original injury or the date of the request to reopen the claim. In 1995, however, the legislature renumbered NRS 616.545 as NRS 616C.390 and added the following provision:

10.   The provisions of this section apply to any claim for which an application to reopen the claim . . . is made pursuant to this section, *regardless of the date of the injury or accident to the claimant . . . .*

(Emphasis added.)

This court has held that "[w]here a former statute is amended, or a doubtful interpretation of a former statute rendered certain by subsequent legislation . . . such amendment is persuasive evidence of what the Legislature intended." Roberts v. State of Nevada, 104 Nev. 33, 38, 752 P.2d 221, 224 (1988) (citing Sheriff v. Smith, 91 Nev. 729, 734, 542 P.2d 440, 443 (1975)). We conclude that the legislature's 1995 amendment of NRS 616.545 indicates that the version of NRS 616.545 in effect on the date of the request to reopen should be applied.[2] Thus, the appeals officer applied the appropriate standard.

Although the parties focus on whether the 1993 version of NRS 616.545 should be applied retroactively, we note that retroactive application is not the issue in this case. Appellant's industrial

_____

[2]*See also* Horne v. SIIS, 113 Nev. 532, 936 P.2d 839 (1997) (pre-1993 version of NRS 616.545 applied when request to reopen claim was made before 1993 amendment took effect).

injury occurred in 1988; however, his subsequent injury, and the reopening of his claim, did not occur until 1994, after the 1993 amendments had been enacted. Accordingly, the appeals officer's application of NRS 616.545 as amended in 1993 did not constitute retroactive application; such application did not take away or impair any "vested right" of appellant, because he had no right to reopen his claim until after the July 14, 1994 accident took place. *See* K-Mart Corporation v. SIIS, 101 Nev. 12, 21, 693 P.2d 562, 567 (1985) (statute operates retroactively when it takes away or impairs vested rights acquired under existing laws).

*Whether the appeals officer's decision is supported by substantial evidence*

Appellant also contends that the evidence presented at the hearing was sufficient to require the reopening of his claim under the post-1993 requirements of NRS 616.545, because Drs. D'Ambrosio and Thomas, two board certified orthopedic surgeons, found that appellant's prior industrial accident was the primary cause of his later injury. Appellant contends that the opinions of those doctors are more credible than that of Dr. Oliveri, a physiatrist, who found that the later injury was unrelated to the original accident. Accordingly, appellant asserts that the appeals officer was required to reopen his claim under the post-1993 version of NRS 616.545.

First, we note that appellant's contention concerning the physicians' findings is only partly correct. Although Dr. D'Ambrosio specifically stated that, in his opinion, appellant's 1988 injury was a primary cause of his 1994 injury and surgery, Dr. Thomas did not; he stated only that there was "a definite relationship" between the two. Additionally, the appeals officer specifically found that Dr. D'Ambrosio's finding of "primary cause" was not credible, and that Dr. Oliveri's determination that the 1994 accident caused a second, unrelated injury was credible. An administrative agency's decision based on a credibility determination is not open to appellate review.[3] Brocas v. Mirage Hotel & Casino, 109 Nev. 579, 585, 854 P.2d 862, 867 (1993) (citation omitted).

---

[3]We take judicial notice of the fact that a physiatrist is a licensed medical doctor who specializes in physical medicine. Accordingly, we reject appellant's implications that a physiatrist is less medically qualified or competent than an orthopedic surgeon, and that Dr. Oliveri's opinion is thus intrinsically less credible than that of Drs. D'Ambrosio or Thomas.

Additionally, we note that a considerable amount of conflicting evidence was presented which could have supported a reopening of appellant's claim. However, it is well recognized that this court, in reviewing an administrative agency decision, will not substitute its judgment as to the weight of the evidence for that of the administrative agency. State, Dep't of Mtr. Vehicles v. Becksted, 107 Nev. 456, 458, 813 P.2d 995, 996 (1991). The central inquiry is whether there is substantial evidence in the record to support the agency's decision. SIIS v. Christensen, 106 Nev. 85, 87-88, 787 P.2d 408, 409 (1990). Substantial evidence is that which " 'a reasonable mind might accept as adequate to support a conclusion.' " State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). Our review of the record reveals ample evidence that a reasonable person would accept as adequately supporting the appeals officer's conclusion. Accordingly, we conclude that the appeals officer did not err in determining that appellant had not demonstrated that his industrial injury was the primary cause of his subsequent injury.

## CONCLUSION

For the foregoing reasons, we conclude that the appeals officer correctly applied the applicable burden of proof for reopening an industrial injury claim, and that the appeals officer's denial of appellant's request to reopen his claim is supported by substantial evidence in the record. Accordingly, we affirm the order of the district court denying appellant's petition for judicial review.

SPRINGER, C. J., dissenting:

The majority opinion recognizes that when Mr. Langman "accepted his lump sum payment for PPD in 1990, he did so with the understanding that he would be able to reopen his claim in accordance with the provisions of NRS 616.545 then in force," that is to say, reopen his claim by presenting a physician's certificate "showing a change of circumstances which would warrant an increase or rearrangement of compensation." The majority opinion changes the rules on Mr. Langman and requires that Mr. Langman sustain a much greater burden of proof in order to reopen his claim. Mr. Langman rightly complains that he is being treated unfairly by being required now to establish that his current problems were "primarily" caused by his original, work-related injury and not by any other cause. The big change in the rules in effect at the time Mr. Langman accepted his settlement, as compared to the rules now enforced by this court, is that the new rules leave it open to the insurer to prevent a claim-reopening

and to bring in its own doctor to say that the "primary cause" of physical complaints of a claimant seeking reopening of a claim is some factor other than the initial industrial accident. It is much easier for a self-insured employer to avoid reopening a claim under the newly-imposed burden of proof faced by Mr. Langman; and the new procedure is vastly different from the former procedure, under which a claimant merely had to present a physician's certificate "showing a change of circumstances that would warrant an increase or rearrangement of compensation."

I see no reason why Mr. Langman should not be given the benefit of the simpler and less burdensome procedural rules that were in effect when he accepted the settlement. I think that the "physician's certificate" manner of proceeding was part of his agreement to accept the lump sum settlement and that it is unfair and in violation of the contract to change the rules and make reopening his claim more difficult for him than it was at the time of the settlement. Even if it were the intention of the Legislature[1] to change the rules in the stated manner (as claimed by the majority), Mr. Langman's procedural and substantive rights should not be subject to being retroactively diminished.

If the appeals officer had applied the correct burden of proof in this case, there is no doubt about the outcome of Mr. Langman's request to reopen his claim. He would simply have presented his "physician's certificate" and gone ahead with his claim of eligibility to be compensated for the consequences of his back not having been properly fused after his industrial accident. This court's unconvincing and torturous rationalization of the insurer's denial, based upon a prejudicial, *ex post facto* change in burden of proof, does not justify denial of benefits to this injured worker.

As I have said, Mr. Langman would not have been denied his right to reopen his claim had the rules not been changed; however, as I see this case, it is clear that Mr. Langman's claim to reopen should not have been denied even under the new rules.

The facts of this case are quite simple. Mr. Langman was operated on for a work-related back injury. The back surgery involved removal of a spinal disc and a bone graft of two of his vertebrae. After the surgery, Mr. Langman fell and injured his

---

[1]The majority points out that NRS 616C.390(10) provides that the section applies to any application to reopen "regardless of the date of injury or accident . . . ." It is not the "date of injury" that is important here; it is the date of acceptance of the lump sum payment that matters. On the date that Mr. Langman accepted the lump sum settlement, there was one set of rules in effect; but when he sought to reopen his claim, he was faced with another set of rules. The Legislature's speaking to the date of *injury* or the date of *accident* does not affect Mr. Langman's entitlement to have the same burden of proof for reopening as was in effect when he accepted a settlement.

back at the site where his previous surgery had failed. He went to his doctor, Dr. Frances D'Ambrosio, who saw immediately that the work-related surgery had not resulted in a proper fusion of the two vertebrae and that it would be necessary to reoperate in order to correct the defective fusion. Dr. D'Ambrosio concluded, as would be expected, that the primary cause of Mr. Langman's back problems was not the intervening fall but, rather, the failed vertebral fusion. The opinion of the treating physician, Dr. D'Ambrosio, was later confirmed by another orthopedist, Dr. James Thomas, Jr., who examined the medical records and also concluded that the original fusion had not been successful and had not completely healed. According to Dr. Thomas, the segment of Mr. Langman's spine that had been operated remained vulnerable, and there was a "definite relationship" between the work-related surgery and the need for ameliorative surgery.

What makes this case so tragic, both to Mr. Langman and to these kinds of injured workers as a class, is that, upon examining the facts of this case, it is very difficult to see how, under any circumstances, Mr. Langman could have been properly denied his request to reopen his claim. Mr. Langman injured his back on the job; he had unsuccessful surgery to treat this injury; his vulnerable spinal fusion was aggravated by a subsequent trauma, but he most certainly would not be suffering his present complaint had it not been for the unhealed, work-related surgery. The "primary cause" of his present symptoms is, quite clearly, the failed surgery that was necessitated by his work-related injury. Mr. Langman is entitled to have his unsuccessful, work-related vertebral fusion surgically revised at the expense of the self-insured Horseshoe.

One would think that this claim would have been routinely reopened, given the report of Mr. Langman's treating physician, which clearly established not only the relationship of the work-related surgery to Mr. Langman's present complaints, but expressly advised the insurer that the surgery was the "primary cause" of the complaints. How then could such a rightful claim possibly be defeated? The answer is simple: the insurer just hired its own physician, who obligingly incanted the magic words prescribed by the new statute, namely, that subsequent trauma "and not the industrial accident on May 13, 1988, was the *primary cause* of Claimant's *new* injury." (My emphasis.)

I wonder if I am the only one who sees the danger here. From now on, whenever a claimant suffers a "new," non-industrial injury which has any effect at all upon a work-related condition, all the insurer has to do is bring in its own "expert" to say that the later injury is the *primary cause* of the claimant's physical disabilities. This case is a perfect sample of the dangers that

concern me. The Horseshoe doctor merely had to come in and say that the unhealed fusion, in need of repair, was not "primary" (whatever that might mean). That statement alone put an end to Mr. Langman's claim.

In the present case, the appeals officer concluded that it was only the Horseshoe doctor who was "credible" and that, necessarily, Mr. Langman's treating physician and Dr. Thomas were not credible. It is this entirely unsupported and arbitrary conclusion on the part of the appeals officer that is being upheld by both the trial court and this court.

This court is not known for its leaning toward the interests of workers and against the interests of employers, but the present case may be the most prejudicial to the interests of injured workers that can be found in this court's entire catalogue of industrial accident cases. It appears to me that all a self-insured employer has to do now is to have its doctor pronounce that any "new" injury is "primary" and that the industrial accident is therefore secondary to the claimant's physical complaints. It is possible, in any case in which an injured worker seeks to reopen a claim, for an appeals officer to issue a baseless ruling that the insurer's doctor is accepted as credible and the injured claimant's doctor is rejected as not being credible.

I would reverse the ruling of the appeals officer and the district court on both of the grounds asserted by Mr. Langman. Mr. Langman should not have been faced with new rules and a new burden of proof; and Mr. Langman's failed spinal fusion is without doubt the primary cause of his present complaints. Mr. Langman is entitled to reopen his claim. The present injustice is troublesome, but not so troublesome as the prospect of similar unfair treatment of industrial claimants in the future based on the opinion that is issued today.