GLADYS SMITH, Appellant, *v.* SHERWIN GAR-
SIDE AND RAYMOND GERMAIN, DBA BONANZA
PRINTERS, INC., RESPONDENTS.

No. 4284

September 29, 1960                          355 P.2d 849

*Harry E. Claiborne,* of Las Vegas, for Appellant.

*Denton & Smith* and *George F. Ogilvie, Jr.,* of Las
Vegas, for Respondents.

## OPINION

By the Court, BADT, J.:

Plaintiff below, appellant herein, commenced a common-law action for damages by reason of becoming afflicted with a chest infection which developed into idiopathic pericarditis and then into systemic lupus erythemotosis, all alleged to result from the negligence of defendants in failing properly to heat the building where she was employed. At the conclusion of plaintiff's case, the court granted defendants' motion to dismiss under Rule 41(b) NRCP.[1] This appeal followed.

Defendants, plaintiff's employers, had accepted the provisions of the Industrial Insurance Act, and it is conceded that plaintiff's condition arose out of and in the course of her employment. The trial court held that accordingly the plaintiff's exclusive remedy was against the Nevada Industrial Commission. If, then, her condition was the result of an accident and compensable under the provisions of the Nevada Industrial Insurance Act, NRS 616.010 et seq., or was the result of an occupational disease and compensable under the provisions of the Nevada Occupational Diseases Act, NRS 617.010 et seq., the summary judgment in favor of defendants was correct. McColl v. Scherer, 73 Nev. 226, 315 P.2d 807. Appellant contends that her condition was the result neither of an accident nor an occupational disease, and that she was accordingly at liberty to pursue her common-law remedy against the defendants by reason of their negligence in

---

[1] "* * * After the plaintiff has completed the presentation of his evidence, the defendant * * * may move for a dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury."

failing to provide a safe place for her to work. We have concluded that the law supports these contentions, thus requiring a reversal of the judgment and a remand for trial of her common-law action against defendants.

Respondents, in their opening and reply briefs, support the judgment of dismissal on four grounds: (1) that the injuries suffered by appellant resulted from an accident as that term is defined in NRS 616.020; or (2) that her condition was the result of an occupational disease as defined in NRS 617.440; (3) that appellant is bound by her election of remedy in filing a claim with and accepting benefits from the Nevada Industrial Commission; and (4) that appellant had failed to prove liability on the part of respondents at common law.

The court in its opinion from the bench granting the motion to dismiss made certain findings. It first found that there was no accident. It then found that the respondents had provided appellant an improper place in which to work and that the cold temperature brought about the condition of appellant's incurable disease; that such was an occupational disease contracted by reason of the unfitness of the place, being too cold in which to work, and thus compensable under the Nevada Occupational Diseases Act.

Upon the oral argument respondents abandoned support of the order of dismissal under the court's theory of an occupational disease, thus taking the position that, while the trial court was wrong in holding that the plaintiff's condition was an occupational disease, it was likewise wrong in finding that it did not result from an accident; and that accordingly its judgment was right and must be affirmed.

Plaintiff was employed by the defendants in the bindery department of their printing plant in the City of Las Vegas. Toward the end of March 1956 defendants had turned the heat off in the building because warm weather had set in. However, on about March 28 of that year the temperature dropped. The plant was a concrete building with a concrete floor and a high roof. It had no ceiling. It was so cold that the foreman wore a Mackinaw jacket and a cap with ear muffs. The heating facilities

comprised two large gas heaters but they could not be made to function. It was too cold to work or to handle the papers or the machinery. She complained to both partners and to the shop foreman. Her testimony in these respects was corroborated. The situation continued for all of one day and half of the next. Plaintiff became chilled, suffered severe chest pains, was treated by her doctor and hospitalized, and treated first for pleurisy, then idiopathic pericarditis and then for systemic lupus erythemotosis. After treatment at the hospital at Las Vegas, she was sent to the hospital at Beverly Hills, came back to Las Vegas, and was examined and treated from time to time thereafter. The medical testimony indicated the treatment in detail, the plaintiff's failure to respond to it and eventually the findings of the pathologist to verify the diagnosis of lupus cells in the bloodstream, the progress of which cells closes off the little blood vessels in the organs, causing them to fail to function and inevitably resulting in the death of the patient; that her being subjected to the exposure to cold where she worked triggered the disease's process. As a result she is unable to follow her former work or perform any violent exercise. She is no longer able to drive a car, or to perform work in the printing trade. She has trouble in climbing stairs and even in walking. She is able to work only about half time, and at work not involving such activity as required in her former work of handling power cutters, folding and stitching machines and in handling and cutting paper. Her former earnings of $100 a week are supplanted by activities that provide $35 a week. She introduced in evidence medical, hospital, and drug bills aggregating some $2,500. She filed a claim with the Nevada Industrial Commission which paid her hospital bills in Las Vegas and her medical bills up to May 21, 1956, but no later bills accruing and no compensation.

(1) We have noted the four grounds upon which respondents seek to sustain the dismissal at the conclusion of plaintiff's case, and the abandonment of the

ground that her condition was the result of an occupational disease. This was necessarily so by reason of the requirements of NRS 617.440 requiring that such disease "does not come from a hazard to which workmen would have been equally exposed outside of the employment," and that "the disease must be incidental to the character of the business."

(2) In support of the judgment that the injuries suffered resulted from an accident as that term is defined in NRS 616.020 (contrary to the finding of the trial judge), respondents refer first to the statutory definition: " 'Accident' shall be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Respondents argue that the fall in temperature was an unexpected and unforeseen event, that it happened suddenly, and that it produced at the time objective symptoms of an injury, as she became sick in one day, or at the most two days, and that her chest pains developed immediately. They contend that the situation therefore meets the definition set forth in the statute as construed by this court in Pershing Quicksilver Co. v. Thiers, 62 Nev. 382, 390, 152 P.2d 432, 436, and in the later case of Kennecott Copper Corp. v. Reyes, 75 Nev. 212, 337 P.2d 624. Respondents also cite several cases from other jurisdictions as examples of "numerous cases" indicating their conclusion that such a situation is "an accident." It would serve no purpose to discuss the Pershing Quicksilver case or the Kennecott Copper case at length. It is enough to say that they do not support the contention of respondents.

Several of the cases from foreign jurisdictions contain language that would appear to support their contention, particularly Pan American Airways, Inc. v. Willard, 99 F.Supp. 257 (S.D.N.Y. 1951), in which the court held that an employee who had contracted lupus erythemotosis by reason of excessive exposure to sunshine, resulting in his death, had suffered an accidental injury. It is conceded that the case presents a medical parallel in that extreme exposure to heat and excessive sunshine, as well

as extreme exposure to cold, will trigger lupus erythemotosis. It was held that compensation had properly been awarded by the deputy commissioner, Federal Security Agency, pursuant to the Longshoremen's and Harbor Workers' Compensation Act. 44 Stat. 1424, 33 U.S.C.A. § 901, et seq. It does not appear, however, that such federal act contains the definition occurring in our own statute, NRS 616.110: " 'Injury' and 'personal injury' shall be construed to mean a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result, and resulting from an external force * * *." (Subparagraph 2 of the same section indicates that the injury referred to is one resulting from an "accident.") To the contrary, the definition contained in the federal act, 33 U.S.C.A. 902(2), so far as applicable, is as follows: "The term 'injury' means accidental injury or death arising out of and in the course of employment * * *." This definition entirely omits the restrictive elements contained in the Nevada definition.

"Traumatic" (derived from the Greek trauma, a wound) is defined by Webster as "of, pertaining to, or resulting from a trauma; caused by a wound, injury or shock * * *." This is even further confined by the Funk & Wagnall definition relied on in Higgins v. Department of Labor and Industries, infra: "any injury to the body caused by violence."

Contrary to respondents' contention, a review of the authorities indicates that statutes corresponding with or similar to the Nevada statute have been uniformly construed to preclude a happening such as the one here involved.

In the following cases the court was concerned, under statutes identical or similar to our own, with the same question here presented—whether proof had been made that the employee's condition was the result of an "accident" as meaning an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury, or whether the injury was a sudden

and tangible happening of a traumatic nature, producing an immediate or prompt result, and resulting from an external force. Concededly, the factual situations differed, but we consider the cases ample authority for the conclusion reached. Such cases are: Higgins v. Department of Labor and Industries, 27 Wash.2d 816, 180 P.2d 559; Stevens v. Village of Driggs, 65 Ida. 733, 152 P.2d 891; Costly v. City of Eveleth, 173 Minn. 564, 218 N.W. 126; Sonson v. Arbogast, 60 Ida. 582, 94 P.2d 672; Meldrum v. Southard Feed & Mill Co., 229 Mo.App. 158, 74 S.W.2d 75; Jones v. Yankee Hill Brick Manufacturing Co., 161 Neb. 404, 73 N.W.2d 394; Murray v. National Gypsum Co., 160 Neb. 463, 70 N.W.2d 394. See also, in general, 99 C.J.S. 542, Workmen's Compensation Acts, secs. 163 and 164 under the headings "Ordinarily there is no right to benefits under Workmen's Compensation Acts for mere disease, that is, general idiopathic disease, as distinguished from traumatic disease," and "Under many statutes there can be no recovery for disease unless there has been some traumatic injury, and before compensation can be allowed it must be established that the disease was proximately caused by an accident or injury * * *."

Just as it would have been doing violence to the plain and commonly understood meaning of words to have held that Reyes' death in a slide in open pit mining (Kennecott Copper Corp. v. Reyes, supra) was not the result of an accident, it would do like violence to the statutory definition to hold here that Mrs. Smith's disease was the result of an accident.

We must accordingly reject the contention that the injuries suffered by appellant resulted from an accident as that term is defined in our statute.

(3) We must also reject the contention that because appellant had applied to the Industrial Commission for relief and because the commission had paid some of her initial medical and hospital bills, this counted as an election on her part, precluding her from seeking common-law relief. Respondents contend that we so held in First

National Bank of Nevada v. The Eighth Judicial District Court, 75 Nev. 77, 335 P.2d 79. That case does not so hold.

(4) Respondents contend further that the dismissal was proper because the plaintiff failed to prove a prima facie case of liability on the part of the defendants, in that she had not proved (a) that they were negligent in failing to provide heat in the building where she was employed or (b) that such negligence, if any, was the proximate cause of her illness; and (c) even assuming the establishment of negligence and proximate cause, she failed to show the amount of her damage. We have reviewed above enough of the evidence to indicate that there was sufficient evidence to go to the jury on points (a) and (b). As to point (a), we may refer also to NRS 618.230 requiring every employer to furnish a place of employment which shall be safe for employment therein, and NRS 618.240, providing that no employer shall require, permit or suffer any employee to go or be in any place of employment which is not safe, or to neglect to do anything reasonably necessary to protect the safety of employees, or to maintain any place of employment that is not safe.

As to point (c), respondents urge that while plaintiff testified that her earnings have been reduced from $100 a week to $35 a week, there was an entire lack of proof of her life expectancy; that under the medical testimony as to the fatal nature of the disease she might live for another month or for another 40 years; and any verdict by the jury would be speculative. However, some three and one-half years had elapsed from the date of the inception of her illness to the date of trial. That period at least was definite. She had also testified to her pain and suffering, as well as the incurring of some $2,500 in medical and hospital bills. The point is accordingly prematurely made. The fact that the jury might be limited in the amount of damages by loss of her earning capacity would not, under submission of the case to them on proper instructions, preclude them from finding such

damages as might be warranted on this, as well as on other items.

The judgment of dismissal cannot be supported on any of the grounds asserted by respondents.

Reversed with instructions to deny the motion to dismiss, and remanded for further proceedings.

MCNAMEE, C. J., and PIKE, J., concur.