OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 Under the Nevada Industrial Insurance Act (NIIA), a workers’ compensation claimant is entitled to benefits for an industrial injury only upon proving that he or she suffered an injury by accident that arose out of and in the course of employment. A workers’ compensation claimant generally must notify his or her employer of a work-related injury, in writing, promptly after an alleged accident. When the claimant files a notice of injury after his or her employment is terminated, a rebuttable presumption is established that the injury did
 
 not
 
 arise out of or in the course of employment.
 

 Thus, in these consolidated workers’ compensation matters, we first consider whether to reexamine our long-standing jurisprudence concerning the interpretations of “accident” and “injury,” in light of the neutrality now required when construing the NIIA.
 
 [1]
 
 
 *359
 
 We also consider what evidence is required to rebut the statutory presumption that arises when a claimant files a notice of injury after the claimant’s employment is terminated.
 

 We conclude that the neutrality rule does not require us to overturn 25 years of precedent regarding the construction of “accident” and “injury.” We further conclude, after examining the legislative history, that to rebut the presumption that arises when a claimant files a notice of injury after termination, the claimant must prove that the injury did not arise from an event that occurred after termination. Given our enunciation of this standard for rebutting the statutory presumption, we ultimately reverse a district court order denying a petition for judicial review and remand that matter so that the appeals officer may revisit the issue of whether the claimant rebutted the presumption and demonstrated that she is entitled to workers’ compensation under the standard articulated in this opinion.
 

 As a secondary matter regarding the same workers’ compensation claim, we examine a district court order upholding an award of permanent partial disability. Although we discern no error in the amount of disability benefits awarded, whether the claimant is entitled to this award inevitably turns on whether she is entitled to workers’ compensation in the first instance. Accordingly, we remand this matter so that it may be considered with the factual findings to be made on the claimant’s eligibility for workers’ compensation. If it is ultimately determined that the claimant is not entitled to workers’ compensation, then the disability benefits award must be vacated. But if it is determined that the claimant is entitled to workers’ compensation, then the claimant should receive the amount of permanent partial disability benefits previously awarded because the award is supported by substantial evidence.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 Respondent Sheila Milko worked for appellant Law Offices of Barry Levinson, P.C., as a law clerk for five months in 2001 and 2002. Milko was employed by Levinson on the date of her injurious accident, January 3, 2002, but her employment was terminated 12 days later.
 

 On the date of the accident, January 3, Milko was preparing responses to interrogatories for one of the law firm’s clients. According to Milko, she was reaching into the bottom drawer of her filing cabinet to remove three large files that she needed to complete her work when she felt a sharp pain in her neck and shoulders. The pain continued for some time while Milko attempted to continue working, she asserts, but eventually it subsided. She left the office to have lunch with a coworker, during which, she claims, the pain returned. After returning to work, Milko, ostensibly worried that she was having a heart attack, canceled a meeting with a
 
 *360
 
 client and asked the coworker with whom she had eaten lunch to drive her to an urgent care facility.
 

 The urgent care doctor dismissed Milko’s worries about heart problems and diagnosed right arm radiculopathy. Milko did not, at that time, tell the urgent care doctor about lifting the folders or that anything had happened at work. After seeing the urgent care doctor, Milko returned to work. Almost two weeks later, Milko’s employment was terminated.
 

 The day after her termination, 13 days after her alleged accident occurred, Milko saw her primary care physician, Dr. Robert White, who evaluated her condition. After seeing Dr. White, Milko returned to the urgent care doctor whom she had seen on the day of her alleged accident to request that he fill out a workers’ compensation claim form. The doctor wrote on the form that he was unable to determine whether Milko’s injury was work related. Milko then filed the workers’ compensation claim forms prepared by Dr. White and the urgent care doctor. Milko continued treatment with Dr. White, who eventually diagnosed Milko as suffering from a cervical disk disorder.
 

 After Milko filed her claim, respondent, the Nevada Division of Industrial Relations (DIR), determined that Levinson had not maintained workers’ compensation insurance at the time of Milko’s incident. Accordingly, DIR’s third-party administrator reviewed Milko’s claim, denying the claim for the following reasons: the accident was not reported timely; Milko filed the accident report after termination, which implicated the presumption that her condition was not connected to her employment; Milko had preexisting conditions; and Milko failed to prove that the injury arose out of and in the course of employment. Milko administratively appealed.
 

 An appeals officer issued a decision in favor of Milko. The appeals officer specifically found that, based on the medical reporting, Milko’s condition was work related. The appeals officer also found no evidence of a preexisting condition and concluded that Milko had shown that she suffered from an industrial injury, rebutted the presumption that arose because she filed her notice of injury after termination, and demonstrated that her delay in formally reporting the injury should be excused for mistake.
 

 Levinson petitioned the district court for judicial review. At the hearing on the petition, Levinson argued, as it had before the appeals officer, that Milko’s condition did not constitute an injury by accident under the statutory definitions; Milko produced insufficient evidence to rebut the presumption that her injury was not work related, given that she did not report her injury before her employment was terminated; and Milko failed to prove by a pre
 
 *361
 
 ponderance of the evidence that her injury arose out of and in the course of employment. The district court, however, determined that the appeals officer’s decision was supported by substantial evidence and that, therefore, Levinson had failed to show an abuse of discretion or error of law warranting reversal. Levinson has appealed the district court’s decision denying judicial review.
 

 Meanwhile, after Milko completed a series of treatments, her injury was declared stable and ratable, and she was scheduled for a permanent partial disability (PPD) evaluation with an agreed-upon rating physician. That rating physician determined that Milko had five-percent impairment on a total body basis. After the DIR awarded Milko PPD benefits based on that five-percent rating, both Milko and Levinson administratively appealed. Because Milko then arranged to obtain a second PPD evaluation,
 
 [2]
 
 the hearing officer directed the DIR to reconsider the matter in light of the second evaluation.
 

 The second PPD evaluation resulted in a 17-percent impairment rating, and because of the disparity between the first and second ratings, the DIR requested a third physician to conduct a record review. The third physician, who did not examine Milko in person, concluded that a seven-percent impairment rating was appropriate.
 

 Ultimately, the matter was heard by an appeals officer. The appeals officer, also noting the disparity between the ratings, ordered that Milko be evaluated by a fourth physician, which resulted in a 15-percent impairment rating.
 
 [3]
 
 The appeals officer concluded that the fourth physician’s PPD evaluation was the most persuasive and credible, as it most accurately described Milko’s condition, and the appeals officer thus awarded Milko PPD benefits based on the 15-percent rating. Levinson’s subsequent district court petition for judicial review was denied, and Levinson has appealed. Because whether Milko is entitled to any PPD benefits in the first instance depends on whether she met her burden to prove that her injury arose out of and in the course of her employment, these appeals were consolidated for resolution.
 

 DISCUSSION
 

 In these cases, we consider the definitions of “accident” and “injury” in light of the neutrality rule, the rebuttable presumption
 
 *362
 
 established by NRS 616C. 150(2), and whether the PPD benefits award is based on substantial evidence and not otherwise arbitrary or capricious.
 
 [4]
 

 Standard of review
 

 The standard for reviewing an order denying judicial review of a final administrative decision is well settled. Like the district court, we evaluate the agency’s decision for clear error or an arbitrary and capricious abuse of discretion.
 
 [5]
 
 The agency’s fact-based conclusions of law “are entitled to deference, and will not be disturbed if they are supported by substantial evidence.’ ’
 
 [6]
 
 Substantial evidence exists if a reasonable person could find the evidence adequate to support the agency’s conclusion,
 
 [7]
 
 and we may not reweigh the evidence or revisit an appeals officer’s credibility determination.
 
 [8]
 
 Purely legal questions, however, we review de novo.
 
 [9]
 
 Our review is confined to the record before the agency.
 
 [10]
 

 Satisfying the ‘ ‘accident
 
 ’ ’
 
 and ‘ ‘injury ’ ’ requirements
 

 To obtain workers’ compensation benefits for an industrial injury, a claimant must show, by a preponderance of the evidence, that his or her condition meets the statutory requirement of an “injury” caused by “accident,” which arises out of and in the course of employment.
 
 [11]
 
 With respect to the injury by accident requirement, the Legislature has defined both “accident” and “injury” in separate statutes. “ ‘Accident’ means an unexpected or unforeseen
 
 *363
 
 event, happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury.”
 
 [12]
 
 “ ‘Injury’ or ‘personal injury’ means a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence.”
 
 [13]
 

 Levinson argues that, as a matter of law, Milko cannot prove that she suffered an accidental injury because the event that allegedly caused her injury — reaching—does not satisfy the “violently” requirement of an accident or the “traumatic nature” requirement of an injury. Levinson asserts that these requirements have a different meaning since the Legislature enacted the neutrality rule, NRS 616A.010. It further argues that because Milko’s doctors used terms that could indicate they considered her condition to be an occupational disease, insufficient evidence supported the appeals officer’s conclusion that Milko suffered an industrial injury.
 

 The meanings of “violently” and “traumatic nature”
 

 In a 1983 case,
 
 American International Vacations v. MacBride,
 
 we considered the elements that must be present for a work-related incident to fit within the statutory definitions of “accident” and “injury.”
 
 [14]
 
 In that case, we reasoned that the “violently” element of an accident is satisfied by “any cause efficient in producing a harmful result.”
 
 [15]
 
 We also determined that the “traumatic nature” element of an injury was satisfied if the “violently” element of an accident was met.
 
 [16]
 

 Now, 25 years later, Levinson argues that the
 
 MacBride
 
 explanations of “accident” and “injury” should be narrowed, in light of the neutrality rule. The neutrality rule, which was enacted in 1993, requires the interpretation of workers’ compensation laws according to their plain meaning.
 
 [17]
 
 Under this rule, we have rejected tests derived from jurisdictions in which liberal construction is the law.
 
 [18]
 
 We have, however, continued to apply the pre-1993 construction of “accident” and “injury.”
 
 [19]
 

 
 *364
 
 Although in
 
 MacBride
 
 we referred to our former policy of liberally construing workers’ compensation laws in favor of the claimant, our interpretation of “violently” was also based upon the plain meaning of the statutes.
 
 [20]
 

 MacBride
 
 was decided 25 years ago, and although the Legislature enacted the neutrality rule 10 years after
 
 MacBride,
 
 at no point has it amended the statutory definitions of “accident” or “injury” in a way that alters the
 
 MacBride
 
 interpretations. Therefore, we presume that the Legislature approves of the
 
 MacBride
 
 interpretations,
 
 [21]
 
 and we conclude that the neutrality rule does not require us to overturn 25 years of precedent by redefining “accident” and “injury.”
 

 The appeals officer’s industrial injury finding
 

 Levinson argues that the opinion letters and medical records submitted to the appeals officer by Milko’s doctors suggest that Milko’s condition was caused by repetitive movement and, thus, was not the result of an injury by accident, as the appeals officer found. Levinson bases this argument on the fact that the opinion letters contain references to regular or repetitive actions.
 

 As discussed above, to show that she suffered an injury by accident, Milko had to demonstrate that she experienced an accident — “(1) an unexpected or unforeseen event; (2) happening suddenly and violently; and (3) producing at the time objective symptoms of injury”
 
 [22]
 
 — that caused an injury — “[(1)] a sudden and tangible happening [(2)] of a traumatic nature, [(3)] producing an immediate or prompt result [(4)] which is established by medical evidence.”
 
 [23]
 
 Milko presented evidence to the appeals officer establishing that a single event, reaching to lift a particularly heavy file, immediately caused her pain.
 

 Because it was unforeseen that reaching to lift the file would cause Milko pain, the first prong of “accident” was met. It was capable of producing a harmful result, thus it happened suddenly and violently, because it caused her pain and ultimately resulted in a cervical disk disorder. Finally, her immediate pain was an objective symptom of injury. Therefore, substantial evidence supports
 
 *365
 
 the appeals officer’s finding that Milko suffered an accident. Further, substantial evidence supports the appeals officer’s finding that Milko suffered an injury because Milko adduced medical evidence showing a sudden and tangible happening, traumatic in nature because it was capable of producing a harmful result, that produced an immediate result in Milko’s cervical vertebrae, later diagnosed as cervical disk disorder; thus, substantial medical evidence established an injury.
 

 While the medical reporting referred to repetitive motion, it also opined that her injury was caused by a single event; it is not the role of this court to reweigh the evidence, only to determine whether a reasonable person could have concluded, based on the evidence presented, that Milko suffered an accidental injury. Here, the appeals officer relied on the medical experts’ opinions and Milko’s testimony. Although the evidence might be inconsistent, a reasonable person could have concluded that Milko suffered an injury by accident.
 

 The rebuttable presumption of NRS 616C.150(2)
 

 To recover workers’ compensation benefits for an injury, Milko must prove, by a preponderance of the evidence, that her “injury arose out of and in the course of [her] employment,” as set forth in NRS 616C. 150(1). Because Milko admittedly failed to file a notice of injury before her employment was terminated, the other subsection of that statute, NRS 616C. 150(2), establishes a rebut-table presumption that the injury did
 
 not
 
 arise out of and in the course of employment.
 

 Levinson argues that substantial evidence does not support the appeals officer’s fact-based conclusion that Milko rebutted the presumption set forth in NRS 616C. 150(2). Although Milko conceded that the presumption applied to her claim, neither the appeals officer nor the district court addressed how she could rebut the presumption. Before determining whether Milko adduced sufficient evidence to rebut the presumption, we must determine how, legally, the presumption can be rebutted.
 

 We have not previously addressed the NRS 616C. 150(2) presumption, which provides that “if the employee files a notice of an injury pursuant to NRS 616C.015 after his employment has been terminated for any reason, there is a rebuttable presumption that the injury did not arise out of and in the course of his employment.” Interpreting NRS 616C.150(2) is a legal question that this court reviews de novo.
 
 [24]
 

 
 *366
 
 In general, rebuttable presumptions require the party against whom the presumption applies to disprove the presumed fact.
 
 [25]
 
 The presumed fact is the factual conclusion created by the presumption.
 
 [26]
 
 A presumption is established by proof of the basic facts.
 
 [27]
 
 An opposing party may attempt to rebut the presumption by adducing evidence, independent of the basic facts, that tends to disprove the presumed fact.
 
 [28]
 
 In a case like this, in which the basic facts were established, but the opposing party offered direct evidence to rebut the presumed fact, the appeals officer must determine how probable the existence of the presumed fact is.
 
 [29]
 
 If reasonable people would necessarily agree that the nonexistence of the presumed fact is more probable than not, the appeals officer must find against the presumed fact’s existence, meaning that the opposing party successfully rebutted the presumption.
 
 [30]
 

 To determine how Milko could rebut the NRS 616C.150(2) presumption, we must first determine what presumed fact it establishes. NRS 616C. 150(2) establishes a presumed fact that “the injury did not arise out of and in the course of [the claimant’s] employment.’ ’ But this statute uses the same language as that establishing the claimant’s burden of proof in NRS 616C. 150(1). Thus, if we apply the above rules to create a standard for rebutting the NRS 616C.150(2) presumption, a claimant who files his or her notice of injury after termination must prove that his or her injuries more probably than not arose out of and in the course of employment. Then, under NRS 616C. 150(1), the claimant would have to prove the same thing to meet the burden of proof placed on all workers’ compensation claimants.
 

 One tenet of statutory construction requires statutes to be “construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory.’ ’
 
 [31]
 
 This
 
 *367
 
 tenet is based on the “presumption that every word, phrase and provision in the enactment has meaning.”
 
 [32]
 
 Applying the plain language of NRS 616C. 150(2) would render the presumption therein meaningless because to disprove the presumed fact, the claimant would simply have to prove that his or her injury arose out of and in the course of his or her employment, as is already required under NRS 616C. 150(1). This internal conflict renders the statute ambiguous. To resolve this conflict, we look to the legislative history and the entire statutory scheme to determine the legislative intent behind the statute.
 
 [33]
 

 In 1993, the Legislature overhauled Nevada’s workers’ compensation system.
 
 [34]
 
 The main reason for the overhaul was financial: the workers’ compensation system was facing bankruptcy.
 
 [35]
 
 In presenting the bill that enacted NRS 616C.150, a senator discussed the NRS 616C. 150(2) presumption: “It . . . has a rebuttable presumption against [the] course and scope of employment.”
 
 [36]
 
 The language of NRS 616C. 150(2), however, establishes a presumption against both the “arising out of employment” requirement and the “in the course of employment” requirement. The senator’s statement suggests that the Legislature intended the presumption to address the “in the course of” requirement and the legislative history as a whole indicates that the Legislature intended the presumption to further limit entitlement to workers’ compensation.
 
 [37]
 
 Our construction of the statute must give meaning to both subsections of NRS 616C.150 and abide by the Legislature’s intent to limit the payment of workers’ compensation claims.
 

 To honor the legislative intent and give meaning to both subsections of NRS 616C.150, we determine that the Legislature intended subsection (2) to create a presumption that the injury was caused by an event that occurred outside the course of employment. The rebuttable presumption also applies only to terminated employees, suggesting a link between the presumption and the termination. Therefore, we construe NRS 616C. 150(2) as creating a presumed fact that the injury arose from an event that occurred after the termination of employment. This construction honors the legislative intent by addressing the requirement that the injury
 
 *368
 
 occur in the course of employment and gives meaning to both subsections of NRS 616C.150. To rebut the presumption, a claimant must prove that his or her injury did not arise from an occurrence after termination. Although it is difficult to prove the nonexistence of a fact, the claimant must introduce credible evidence that no event occurred between his or her termination and the filing of the notice of injury that caused his or her injury.
 

 During oral argument, Levinson suggested that NRS 616C. 150(2) should be read to create a presumed fact that the claimant fabricated the injury or, if an injury existed, that the claimant fabricated the injury’s connection to the former employment. To disprove that presumed fact, Levinson argued, the claimant would need to corroborate the injury and its connection to the former employment, using evidence that existed before the termination or the motivation to fabricate. We recognize that this interpretation is appealing because it does not involve proving a negative; however, no support exists for such an interpretation within the statute’s language or legislative history The DIR suggested, also during oral argument, that NRS 616C.150(2) simply requires administrative officers to apply a higher level of scrutiny to an application for workers’ compensation when the notice of injury was filed after termination. The Legislature, however, created a rebuttable presumption, not a higher burden of proof. In the absence of further legislative guidance, we refuse to adopt such interpretations.
 

 After an employer establishes that a claimant filed his or her notice of injury after his or her termination, the presumption in NRS 616C. 150(2) applies. To rebut the presumption, a claimant must introduce evidence that proves the injury did not arise from an event that occurred after termination. Thus, although we affirm the district court’s order denying the petition for judicial review insofar as it pertains to the existence of an accidental injury, because the appeals officer had no opportunity to consider whether Milko rebutted the NRS 616C. 150(2) presumption under this standard, we necessarily reverse the portion of the district court’s order regarding whether the injury “arose out of and in the course of” employment and remand this matter with instructions to remand it to the appeals officer for further administrative proceedings. On remand, the appeals officer must determine whether Milko is able to rebut the presumption that her injury was caused by an event that occurred after termination.
 
 [38]
 

 
 *369
 

 The appeals officer’s decision awarding PPD benefits is based on substantial evidence and is not otherwise arbitrary or capricious
 

 With respect to the appeals officer’s decision awarding Milko PPD benefits based on a 15-percent impairment rating, Levinson raises three issues. First, Levinson argues that the appeals officer’s decision is arbitrary and capricious because it does not explain why the appeals officer relied on one rating physician’s report over another rating physician’s report. Second, Levinson asserts that the variance in ratings indicates that Milko’s condition is not permanent, and thus, PPD benefits are not appropriate at this time. Third, Levinson contends, the appeals officer abused her discretion by relying on the fourth rating physician’s report because that report was based on a mischaracterization of the injury (“moving a heavy file from a lower cabinet,” instead of “reaching into a file cabinet to remove three large expando files”) and thus unreliably stated that apportionment was inappropriate. Milko and the DIR disagree.
 

 Having considered the parties’ arguments in light of the record, we conclude that Levinson’s arguments as to the PPD award are without merit. First, with respect to the appeals officer’s reliance on the fourth physician’s report, the appeals officer determined that that report, which recognized the earlier evaluations, “most accurately assess[ed Milko’s] impairment experienced as a result of [her] industrial injury.” The record demonstrates that, before making this determination, the appeals officer thoroughly considered the varying evidence, as demonstrated by her decision to obtain a fourth rating physician’s evaluation and her order’s recital of the relevant medical diagnoses and each PPD evaluation up to that point. Accordingly, as we may neither reweigh the evidence nor pass upon the appeals officer’s credibility determinations
 
 [39]
 
 when the record demonstrates that the appeals officer made a reasoned decision after considering all of the evidence,
 
 [40]
 
 we will not disturb the appeals officer’s reliance on the fourth physician’s report here.
 
 [41]
 

 
 *370
 
 Next, Levinson asserts that PPD benefits are not appropriate at this time because the variance in ratings suggests that Milko’s condition is not permanent. But as the variance in ratings was apparently caused by differing medical opinions as to which Diagnosis Related Estimate category Milko’s injury fell into, the variance does not necessarily indicate instability or that the injury is not permanent. Indeed, each of the PPD reports, including the fourth physician’s evaluation relied on by the appeals officer, provided that Milko’s condition was permanent, stable, and appropriately rated at that time. As a result, the appeals officer properly considered Milko’s request for PPD benefits.
 

 Finally, as noted above, it is not clear from the appeals officer’s decision that she viewed the mechanism of injury differently from the rating physicians since the phrase “reaching into a file cabinet to remove . . . files” could mean either that Milko was merely reaching for the files when she experienced pain or, as the fourth physician stated, that Milko was actually lifting the files at the time of injury. In any case, any mischaracterization of the injury’s origin does not appear to have played a significant role in the fourth rating physician’s opinion. Instead, the impairment rating was based on that physician’s examination of Milko’s physical condition in relation to her medical diagnoses, under the American Medical Association’s guidelines.
 
 [42]
 
 Further, after reviewing the medical evidence, that physician, like the others, determined that there existed no basis for apportionment, since Milko had no prior injury.
 
 [43]
 
 Accordingly, if Milko’s current condition, as assessed by the rating physicians, is deemed industrial, then the appeals officer properly awarded Milko PPD benefits based on the fourth physician’s 15-percent impairment rating.
 

 Therefore, the appeals officer’s decision is supported by substantial evidence and is not otherwise arbitrary or capricious. Nev
 
 *371
 
 ertheless, because Milko is entitled to PPD benefits only if it is ultimately determined that she is eligible for workers’ compensation under NRS 616C.150,
 
 [44]
 
 we remand this matter to the district court along with the matter regarding her entitlement to workers’ compensation, with instructions that the court, in turn, remand both matters to the appeals officer, so that the appeals officer may maintain consistency between the new determination regarding Milko’s rights to workers’ compensation benefits and any PPD award. If the injury described by the fourth rating physician is ultimately deemed industrial, then the appeals officer should reaffirm the PPD award based on the 15-percent disability rating, but if Milko is unable to rebut the presumption that her injury was caused by an event that occurred after the termination of her employment, under the standard set forth in this opinion, then the appeals officer should make any order necessary to maintain consistency under Nevada’s workers’ compensation laws, including vacating the PPD award.
 

 CONCLUSION
 

 With respect to the issues regarding Milko’s entitlement to workers’ compensation, we affirm in part and reverse in part the district court’s order denying Levinson’s petition for judicial review, and we remand that matter to the district court. On remand, we instruct the district court to remand the matter to the appeals officer for further proceedings in light of this opinion. Although we find no abuse of discretion in the appeals officer’s findings regarding the PPD award, we conclude that such award is necessarily affected by the determination of Milko’s initial workers’ compensation claim; therefore, we remand that matter as well, so that the appeals officer can maintain consistency between the order on remand and any PPD award.
 

 Parraguirre and Douglas, JL, concur.
 

 [1]
 

 See
 
 NRS 616A.010.
 

 [2]
 

 See
 
 NRS 616C.100 (establishing the procedure by which a claimant may obtain a second rating determination).
 

 [3]
 

 See
 
 NRS 616C.360(3)(a) (permitting the appeals officer to refer a claimant to a rating physician for an additional disability determination).
 

 [4]
 

 Levinson also argues that insufficient evidence supports the appeals officer’s finding that Milko’s late reporting of her accident was excused by mistake of fact. The appeals officer found that Milko’s failure to follow the proper notification procedure was excused under NRS 616C.025(2)(b), since she had mistakenly believed, initially, that she was suffering from a heart attack and she was unaware of the connection between her condition and the events at work. Having reviewed the record, we determine that the appeals officer’s fact-based conclusion was supported by substantial evidence.
 

 [5]
 

 Riverboat Hotel Casino v. Harold’s Club,
 
 113 Nev. 1025, 1029, 944 P.2d 819, 822 (1997); NRS 233B.135(3)(e)-(f).
 

 [6]
 

 Jones v. Rosner,
 
 102 Nev. 215, 217, 719 P.2d 805, 806 (1986).
 

 [7]
 

 State, Emp. Security v. Hilton Hotels,
 
 102 Nev. 606, 608, 729 P.2d 497, 498 (1986).
 

 [8]
 

 Langman
 
 v.
 
 Nevada Administrators, Inc.,
 
 114 Nev. 203, 209, 955 P.2d 188, 192 (1998).
 

 [9]
 

 Howard
 
 v.
 
 City of Las Vegas,
 
 121 Nev. 691, 693, 120 P.3d 410, 411 (2005).
 

 [10]
 

 SIIS v. Christensen,
 
 106 Nev. 85, 87-88, 787 P.2d 408, 409 (1990).
 

 [11]
 

 Advanced Countertop Design v. Dist. Ct.,
 
 115 Nev. 268, 270, 984 P.2d 756, 758 (1999) (citing NRS 616A.020(1)).
 

 [12]
 

 NRS 616A.030.
 

 [13]
 

 NRS 616A.265(1).
 

 [14]
 

 99 Nev. 324, 661 P.2d 1301 (1983).
 

 [15]
 

 Id.
 
 at 327, 661 P.2d at 1303.
 

 [16]
 

 Id.
 
 at 328-29, 661 P.2d at 1304 (citing
 
 Smith v. Garside,
 
 76 Nev. 377, 382-84, 355 P.2d 849, 852-53 (1960)).
 

 [17]
 

 Banegas
 
 v.
 
 SIIS,
 
 117 Nev. 222, 231, 19 P.3d 245, 251 (2001).
 

 [18]
 

 See, e.g., Mitchell v. Clark County Sch. Dist.,
 
 121 Nev. 179, 182-83, 111 P.3d 1104, 1106-07 (2005) (rejecting the positional risk test).
 

 [19]
 

 See, e.g., Bullock v. Pinnacle Risk Mgmt.,
 
 113 Nev 1385, 1389-90, 951 P.2d 1036, 1039-40 (1997);
 
 Conway v. Circus Circus Casinos, Inc.,
 
 116 Nev. 870, 875-76, 8 P.3d 837, 841 (2000).
 

 [20]
 

 See MacBride,
 
 99 Nev. at 326-27, 661 P.2d at 1303 (considering the language of the statutory definition of “accident”).
 

 [21]
 

 See Northern Nev. Ass’n Injured Workers v. SIIS,
 
 107 Nev. 108, 112, 807 P.2d 728, 730 (1991) (noting that when the Legislature has had ample opportunity to change statutory law after this court has interpreted that law but does not do so, we presume that the Legislature approves of our construction).
 

 [22]
 

 MacBride, 99
 
 Nev. at 326-27, 661 P.2d at 1303.
 

 [23]
 

 NRS 616A.265(1).
 

 [24]
 

 See State, Dep't of Mtr. Vehicles v. Lovett,
 
 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994) (“Construction of a statute is a question of law subject to de novo review.”).
 

 [25]
 

 NRS 47.180(1) (“A presumption . . . imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence”).
 

 [26]
 

 See Rivera v. American Nat’l Property & Casualty,
 
 105 Nev. 703, 706, 782 P.2d 1322, 1324 (1989).
 

 [27]
 

 Id.
 
 (“A ‘basic fact’ is simply a preliminary fact which must be found to exist before a presumption arises.”).
 

 [28]
 

 NRS 47.200-.220. We note that to attack a rebuttable presumption, a party may, in general, contest both the presumed feet and the basic facts; because the parties in this case conceded the basic facts, we address only methods for contravening the presumed fact.
 

 [29]
 

 NRS 47.200.
 

 [30]
 

 See
 
 NRS 47.200(1).
 

 [31]
 

 Charlie Brown Constr. Co. v. Boulder City,
 
 106 Nev. 497, 502, 797 P.2d 946, 949 (1990),
 
 overruled on other grounds by Calloway v. City of Reno,
 
 116 Nev. 250, 993 P.2d 1259 (2000).
 

 [32]
 

 Id.
 
 at 502-03, 797 P.2d at 949.
 

 [33]
 

 See id.
 

 [34]
 

 S.B. 316, 67th Leg. (Nev. 1993).
 

 [35]
 

 Hearing Before the Senate Comm, on Commerce and Labor, 67th Leg. (Nev., January 19, 1993) (statement of Senator Randolph J. Townsend, Chair, Senate Comm, on Commerce and Labor).
 

 [36]
 

 Presentation of S.B. 316 to the Senate as Comm, of the Whole, 67th Leg. (Nev., March 24, 1993) (statement of Senator Lori Lipman Brown, Member, Comm, on Commerce and Labor).
 

 [37]
 

 See id.
 

 [38]
 

 We note that the appeals officer concluded that Milko rebutted the NRS 616C. 150(2) presumption but failed to specifically state the reasons for her conclusion as required by NRS 233B.125.
 

 [39]
 

 See Langman
 
 v.
 
 Nevada Administrators, Inc.,
 
 114 Nev. 203, 209, 955 P.2d 188, 192 (1998).
 

 [40]
 

 See Spilotro
 
 v.
 
 State ex. rel. Gaming Comm’n,
 
 99 Nev. 187, 190, 661 P.2d 467, 469 (1983) (explaining that factual findings are necessary to ensure reasoned decision making and to enable judicial review without intruding on an agency’s factfinding function). We conclude that the appeals officer’s findings here are sufficient to enable judicial review.
 

 [41]
 

 NRS 233B. 125 requires an appeals officer to separately state findings of fact and conclusions of law. Under that statute, the factual findings, “if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings.” Here, even though the appeals officer appropriately made no factual findings with respect to the
 
 *370
 
 credibility determinations that were “set forth in statutory language,” as no statute describes when an appeals officer should or should not find reporting credible or persuasive, the appeals officer nonetheless noted, in stating her factual findings, why she was relying on the fourth physician’s report — it most accurately assessed Milko’s industrial impairment. Accordingly, even though the appeals officer’s separately stated conclusions of law do not repeat her factual findings in this regard, we discern no violation of NRS 233B.125 in this instance.
 

 [42]
 

 See
 
 NRS 616C.490(2)(a).
 

 [43]
 

 Whether Milko’s condition, even if preexisting to some extent, was industrial must be determined by the appeals officer on remand; this determination bears no import on whether apportionment was appropriate.
 
 Compare
 
 NRS 616C.490(9) (allowing for apportionment for previous permanent disabilities)
 
 with
 
 NRS 616C.175 (explaining when workers’ compensation is available despite preexisting conditions).
 

 [44]
 

 See
 
 NRS 616C.490(1).