136 Nev., Advance Opinion 65

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CLARK COUNTY,<br>Appellant,<br>vs.<br>BRENT BEAN,<br>Respondent. | No. 78443<br><br>**FILED**<br><br>DEC 30 2020<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Affirmed.*

Hooks Meng & Clement and Dalton L. Hooks, Jr., and John A. Clement, Las Vegas,
for Appellant.

Greenman Goldberg Raby & Martinez and Lisa M. Anderson, Las Vegas,
for Respondent.

---

BEFORE GIBBONS, STIGLICH and SILVER, JJ.

*AMENDED OPINION*

By the Court, SILVER, J.:

In *DeMaranville v. Employers Insurance Co. of Nevada*, 135 Nev. 259, 448 P.3d 526 (2019), we addressed the calculation of a retired

workers' compensation claimant's death benefits when the retiree died from a compensable occupational disease. Therein, we held that the retiree was entitled to death benefits based on the wages earned immediately before retirement. *Id.* at 266-67, 448 P.3d at 533. In doing so, we distinguished the death benefits at issue in that case from temporary total disability benefits, *id.* at 266, 448 P.3d at 532-33, which we have held are not available to a retiree when an occupational disease manifests after retirement, *Howard v. City of Las Vegas*, 121 Nev. 691, 695, 120 P.3d 410, 412 (2005) (concluding that a workers' compensation claimant is not entitled to total temporary disability benefits for an occupational disease manifesting after retirement).

In this case, the retiree is seeking neither death benefits nor total temporary disability benefits, but is instead seeking permanent partial disability benefits under a previous version of the governing statute. The retiree argues that the reasoning in *DeMaranville* controls and that he is entitled to a benefits award, while appellant Clark County contends the reasoning in *Howard* controls, negating any benefits award. We conclude that *DeMaranville*'s analysis of compensation for death benefits is directly applicable here because the regulation governing the calculation of compensation for both types of benefits is the same. Furthermore, neither death benefits nor permanent partial disability benefits are statutorily limited based on the amount of work missed, and both are meant to compensate an employee who suffers death or permanent disability resulting from their employment. *DeMaranville*, 135 Nev. at 266-67, 448 P.3d at 533. Both of these points distinguish permanent partial disability benefits from the total temporary disability benefits discussed in *Howard*. We therefore affirm the district court's denial of Clark County's petition for

judicial review, as the appeals officer correctly found that, under the previous version of the governing statute, the retiree was entitled to permanent partial disability benefits based on the wages he was earning at the time he retired.

## FACTUAL AND PROCEDURAL HISTORY

Respondent Brent Bean worked as a Clark County firefighter and retired in 2011. In 2014, he was diagnosed with prostate cancer and had part of his prostate removed. A doctor later assessed him with a 40-percent permanent partial disability rating, and Bean filed for occupational disease benefits. Clark County accepted Bean's claim for medical expenses, but rejected the claim insofar as it sought ongoing permanent partial disability benefits. Clark County reasoned that, because Bean was retired at the time he became permanently partially disabled, he was not earning any wages upon which to base a permanent partial disability benefits award. Thus, although Clark County did not dispute Bean's disability rating, it declined to award him any benefits for that rating.

Bean administratively challenged that decision, arguing his permanent partial disability benefits award should be based on the wages he was earning at the time he retired. The appeals officer agreed and reversed Clark County's denial. The appeals officer declined to apply *Howard*'s holding to Bean's request for permanent partial disability benefits, noting the difference between those benefits and the temporary total disability benefits at issue in *Howard*:[1] "Unlike temporary total disability benefits, which are intended to compensate the injured worker

---

[1]The appeals officer had the parties brief *Howard*'s applicability, but *DeMaranville* was not published at the time the appeals officer entered her decision.

during the temporary period in which he is not working, permanent disability benefits are intended to compensate the injured worker for permanent physical impairment."

The district court had similar reasoning for rejecting Clark County's petition for judicial review challenging the appeals officer's decision. The district court stated that "[p]ermanent partial disability is a medical benefit intended to compensate the injured worker for permanent physical damages caused by the industrial injury or occupational disease and not a form of disability compensation associated with lost wages." The district court therefore rejected Clark County's assertions that *Howard* applied and that it required the court to reinstate the County's denial of Bean's permanent partial disability benefits claim. Clark County now appeals.

## DISCUSSION

We review an administrative agency's decision in the same manner as the district court. *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013). We review factual findings for clear error or an arbitrary abuse of discretion, only overturning if they are not supported by substantial evidence. *Id.* Such evidence exists where "a reasonable person could find the evidence adequate to support the agency's conclusion." *Id.* (quoting *Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 362, 184 P.3d 378, 384 (2008)). Questions of law, including the agency's interpretation of statutes, are reviewed de novo without deference to the agency's decision. *Id.* at 784-85, 312 P.3d at 482. As the County does not dispute that Bean suffered from an occupational disease or challenge his 40-percent permanent partial disability rating, we need only address the appeals officer's interpretation and application of the relevant statutes and administrative code provisions.

NRS 617.453(4) provides that firefighters or their dependents are entitled to compensation for disabling work-related cancers, such as Bean's prostate cancer. This includes both reimbursement for the costs of medical treatments and "[t]he compensation provided in chapters 616A to 616D, inclusive, of NRS for the disability or death." NRS 617.453(4)(a)-(b). Thus, "NRS Chapter 617 does not provide a method for determining the amount of the benefit, but applies NRS Chapters 616A to 616D and their implementing regulations for the purpose of determining benefits." *DeMaranville*, 135 Nev. at 264, 448 P.3d at 531 (internal citation omitted).

At the outset, we note that the Legislature amended NRS 617.453 in 2019 to add a subsection explicitly providing that, if the claim for occupational disease is not made until after the employee retires, the retired employee "is not entitled to receive any compensation for that disease other than medical benefits." 2019 Nev. Stat., ch. 548, § 1, at 3432-33 (limiting the application of subsection (4) to the added language). That amendment does not affect our analysis, however, as it did not become effective until years after Bean filed for the benefits at issue in this appeal. *See id.* at § 3, at 3433 (providing an effective date of July 1, 2019). And, because the amendment does not apply to this case, we do not address whether Bean would be entitled to permanent partial disability benefits under the amended version of the statute. *See Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010) (providing that this court does not render advisory opinions and only resolves "actual controversies").

"When a statute is unambiguous, we apply its ordinary meaning." *Id.* But if its language is susceptible to more than one reasonable interpretation, "it is ambiguous and should be interpreted consistent with the Legislature's intent, according with reason and public policy." *Id.* NRS

616C.490 addresses the amount of a benefit for a permanent partial disability rating. It bases the amount of compensation for such a rating on the employee's "average monthly wage." NRS 616C.490(8). NAC 616C.435 instructs that, to calculate an employee's average monthly wage, one uses a 12-week period "ending on the date on which the accident or disease occurred, or the last day of the payroll period preceding the accident or disease if this period is representative of the average monthly wage." NAC 616C.435(1), (8).

In *DeMaranville*, we concluded that this same provision was ambiguous when attempting to calculate the average monthly wage of an employee who died from an occupational disease after retirement. 135 Nev. at 265, 448 P.3d at 531-32 (recognizing that determining the amount of compensation the employee's dependents were entitled to for death benefits under NRS 616C.505 required calculation of the employee's average monthly wage under NAC 616C.435(1) and (8)). The ambiguity arises because, "[w]hile the date of occurrence for an industrial accident may be unambiguous, the date of occurrence for an occupational disease is not." *Id.* at 265, 448 P.3d at 532. Turning to legislative intent to decipher the provision's meaning, we concluded that the statutory scheme "envision[s] compensating claims arising after separation from service" and that NAC 616C.435, as an administrative regulation, cannot contradict the purpose of that statutory scheme. *Id.* at 265-66, 448 P.3d at 532 (listing statutes showing an intent to compensate employees post-retirement); *see also* NRS 617.453(6) (providing that a firefighter's claim of disability resulting from cancer can be made after separating from employment). We therefore rejected any interpretation of NAC 616C.435 that would reduce the employee's death benefit to zero, as that "would effectively nullify the

provisions in [the workers' compensation] statutes that establish compensable claims." *DeMaranville*, 135 Nev. at 266, 448 P.3d at 532. The same analysis applies here. The statutory scheme at the time envisioned compensating employees like Bean who are diagnosed with disabling occupational diseases after retirement. *See* NRS 617.453(6). And to construe NAC 616C.435 as awarding no benefits to Bean because he was not earning wages at the time he was diagnosed and made his claim would directly contradict the statutes' purpose. *See DeMaranville*, 135 Nev. at 265-66, 448 P.3d at 532.

Resolving the ambiguity of determining a retired employee's average monthly wage under NAC 616C.435, we concluded in *DeMaranville* that the legislative intent demonstrated the benefits calculation "should be related to the wage earned at the time the occupational disease causally connected to the disability occurred." 135 Nev. at 267, 448 P.3d at 533. In support of this conclusion, we noted that the Legislature created an entitlement program to compensate employees for disabilities resulting from an occupational disease that arises out of employment; that the compensation "is based on the value received by the employee for his or her services"; and that the connection between the compensable claim and employment is so great that the connection is conclusively presumed for certain occupational diseases. *Id.* "Thus, the applicable statutory scheme shows a legislative intent to base the amount of [the] claim on the earnings from the employment causally connected to the occupational disease underpinning [the] claim." *Id.* Applying this holding in *DeMaranville*, we concluded that "an occupational disease occurs for the purposes of an original death benefits claim on the last day of the disease-risk exposure that is causally connected to the disease," such that the wages the employee

earned immediately preceding his retirement determined his death benefits amount. *Id.* at 268, 448 P.3d at 534. Again, the same reasoning applies in this case, as the amount of Bean's permanent partial disability benefits is based on the same provision as the death benefits in *DeMaranville*—NAC 616C.435. We therefore conclude that the compensation for Bean's disability must be based on the wages he was earning at the time he retired, as that was "the last day of the disease-risk exposure . . . causally connected to the disease." *DeMaranville*, 135 Nev. at 268, 448 P.3d at 534.

Nothing in *Howard v. City of Las Vegas* impacts our decision here.[2] 121 Nev. 691, 120 P.3d 410. Clark County argues that *Howard*'s holding precludes any award of permanent partial disability benefits to Bean because Bean was not earning any wages upon which to base the calculation of benefits. But it is clear in *Howard* that we were solely addressing total temporary disability benefits. *See generally id.* Moreover, we based our decision in *Howard* on NRS 617.420(1). *Id.* at 693-94, 120 P.3d at 411-12. That statute explicitly limits the payment of compensation for total temporary disability to instances when the disability "incapacitate[s] the employee for at least 5 cumulative days within a 20-day period from earning full wages." NRS 617.420(1). The same limitation is not placed on compensation for permanent partial disability, as the benefits are calculated differently. *See DeMaranville*, 135 Nev. at 266, 448 P.3d at 533 (recognizing that NRS 617.420(1) addresses temporary total disability benefits). *Compare* NRS 616C.475 (addressing the calculation of total

---

[2]We are also not convinced by Clark County's argument that NRS 616C.480 (addressing compensation for total temporary disability when the employee already received lump-sum compensation for permanent partial disability) shows that Bean is not entitled to permanent partial disability benefits in this case.

temporary disability benefits), *with* NRS 616C.490 (addressing the calculation of permanent partial disability benefits). And failing to compensate Bean "would be inconsistent with the intent evinced by the Legislature" to cover claims for disabilities resulting from occupational diseases, such as Bean's, that are presumed to have arisen out of and in the course of his career as a firefighter. *DeMaranville*, 135 Nev. at 267, 448 P.3d at 533; *see also* NRS 617.453 (providing that cancer is rebuttably presumed to arise out of and in the course of employment as a firefighter in certain circumstances).

## CONCLUSION

Based on the foregoing, we affirm the district court's denial of Clark County's petition for judicial review, as the appeals officer correctly found that, under the previous version of NRS 617.453, compensation for Bean's permanent partial disability rating must be based on the wages he earned before retiring.

_____, J.
Silver

We concur:

_____, J.
Gibbons

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A