136 Nev., Advance Opinion 91

IN THE SUPREME COURT OF THE STATE OF NEVADA

ASSOCIATED RISK MANAGEMENT, INC.,
Appellant,
vs.
MANUEL IBANEZ,
Respondent.

No. 80480

FILED

DEC 31 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Eighth Judicial District Court, Clark County; Tierra Danielle Jones, Judge.

*Affirmed.*

Law Offices of David Benavidez and David H. Benavidez, Henderson, for Appellant.

Bertoldo Baker Carter & Smith and Javier A. Arguello, Las Vegas, for Respondent.

BEFORE GIBBONS, STIGLICH and SILVER, JJ.

*OPINION*[1]

By the Court, STIGLICH, J.:

Twenty years ago, we held that the federal Immigration Reform and Control Act (IRCA) preempts Nevada's workers' compensation laws that would otherwise provide undocumented aliens with employment within the boundaries of the United States. *Tarango v. State Indus. Ins. Sys.*, 117 Nev. 444, 448-50, 25 P.3d 175, 178-79 (2001). We further held that, as a matter of state law, undocumented aliens were not entitled to vocational training that would "only be available . . . because of [the worker's] undocumented status." *Id.* at 450-53, 25 P.3d at 179-81. However, we affirmed an award of permanent partial disability benefits to an undocumented alien. *Id.* at 456-57, 25 P.3d at 183. These monetary benefits, paid by the insurer, do not conflict with federal law or undermine the Legislature's intent. In this appeal, we reaffirm that undocumented aliens who are injured while working for a Nevada employer may be eligible for monetary disability benefits.

## *BACKGROUND*

Respondent Manuel Ibanez is an undocumented Nevadan. In 2014, while working as a carpenter for High Point Construction, a Nevada employer, he sustained severe injuries when a falling two-by-four struck him in the head, shoulder, and back. He was treated for these injuries over the next several years, which included multiple surgeries. Even after these

---

[1]We originally resolved this appeal in an unpublished order of affirmance. Respondent moved to publish the order as an opinion. *Cf.* NRAP 36(f). We granted that motion by order entered December 24, 2020, and we accordingly issue this opinion in place of our November 23, 2020, unpublished order.

 

surgeries, he continued to suffer both physical pain and mental trauma related to the accident.

Ibanez's injuries proved debilitating, and so he applied for permanent total disability (PTD) status in June 2018. Appellant Associated Risk Management (ARM), High Point's insurance administrator, denied this request. It determined that Ibanez's disability was only temporary and that he would be able to return to light duty. Further, it determined that Ibanez would be employable if he were eligible to work in the United States.

Ibanez sought review of ARM's determinations pursuant to NRS 616C.320. The hearing officer initially affirmed ARM's denial of benefits, but the appeals officer reversed, granting Ibanez PTD status pursuant to the "odd-lot doctrine." This established doctrine permits a finding of PTD when a worker, "while not altogether incapacitated for work, [is] so handicapped that they will not be employed regularly in any well-known branch of the labor market." *Nev. Indus. Comm'n v. Hildebrand*, 100 Nev. 47, 51, 675 P.2d 401, 404 (1984) (quoting 2 A. Larson, *The Law of Workmen's Compensation*, § 57.51 (1981)); *see* NRS 616C.435(2). The appeals officer relied on Ibanez's well-documented physical impairment traceable to the 2014 accident and subsequent surgeries, which documentation included written opinions by Ibanez's treating physicians. Further, the appeals officer found that Ibanez's lack of a valid work visa was "not relevant" to the determination of PTD status.

ARM petitioned for judicial review. When the district court denied review, ARM appealed to this court. On appeal, ARM argues that the appeals officer committed legal error by granting PTD to an undocumented alien.

## DISCUSSION

*Standard of review*

"When reviewing a district court's order denying a petition for judicial review of an agency decision, we engage in the same analysis as the district court: 'we evaluate the agency's decision for clear error or an arbitrary and capricious abuse of discretion.' We defer to an agency's findings of fact that are supported by substantial evidence and will 'not reweigh the evidence or revisit an appeals officer's credibility determination.' . . . However, questions of law are reviewed de novo." *City of Las Vegas v. Lawson*, 126 Nev. 567, 571, 245 P.3d 1175, 1178 (2010) (quoting *Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 362, 184 P.3d 378, 383-84 (2008)) (internal citations omitted). Unlike pure legal questions, "the agency's conclusions of law, which will necessarily be closely related to the agency's view of the facts, are entitled to deference, and will not be disturbed if they are supported by substantial evidence." *State Indus. Ins. Sys. v. Montoya*, 109 Nev. 1029, 1031-32, 862 P.2d 1197, 1199 (1993) (internal quotation marks omitted).

*The appeals officer did not commit legal error*

Relying on our opinion in *Tarango*, ARM argues that IRCA preempts Nevada's workers' compensation statutes whenever an undocumented alien is involved and that the appeals officer therefore erred by granting Ibanez PTD benefits. Reviewing this question of law de novo, *see Lawson*, 126 Nev. at 571, 245 P.3d at 1178, we conclude that IRCA does not preempt an award of monetary benefits to an undocumented alien.

Nevada's industrial insurance system covers "every person in the service of an employer . . . whether lawfully or unlawfully employed," including "[a]liens." NRS 616A.105(1). "When a statute is clear and

unambiguous, this court will 'give effect to the plain and ordinary meaning of the words.'" *Reif ex rel. Reif v. Aries Consultants, Inc.*, 135 Nev. 389, 391, 449 P.3d 1253, 1255 (2019) (quoting *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010)). NRS 616A.105(1) could hardly be clearer, and so we concluded in *Tarango* that "Nevada's workers' compensation laws apply to all injured workers within the state, regardless of immigration status." *Tarango*, 117 Nev. at 448, 25 P.3d at 178. Accordingly, the issue in *Tarango* was "not whether [an undocumented alien] can receive workers' compensation under our laws . . . [but] whether an injured undocumented worker's access extends to the full depths of the workers' compensation scheme." *Id.* Specifically, we examined the conflict between federal law and the statutory priorities for returning an injured employee to work.

Under our workers' compensation statute, an insurer is directed to prioritize returning an injured worker to similar employment if possible and to vocational training if not. *See* NRS 616C.530. At the same time, federal law positively prohibits any employer from knowingly employing an undocumented alien. *Tarango*, 117 Nev. at 450, 25 P.3d at 179 (citing 8 U.S.C. § 1324(a)). We could not "require[ ] the employer to knowingly violate the IRCA and incur substantial penalties." *Id.* at 453, 25 P.3d at 180. Instead, we concluded that "IRCA preempts Nevada's workers' compensation scheme in so far as it provides undocumented aliens with employment within the boundaries of the United States." *Id.* at 456, 25 P.3d at 183; *cf. Renfroe v. Lakeview Loan Servicing, LLC*, 133 Nev. 358, 360, 398 P.3d 904, 906 (2017) (explaining that a state law is preempted if "compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives")

Supreme Court
of
Nevada

(O) 1947A

5

(quoting *Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 372, 168 P.3d 73, 80 (2007)).[2]

We then turned to vocational training, as opposed to employment. We concluded that even if the provision of vocational training was not technically preempted, such training would be contrary to the legislative intent, in light of our conclusion that a return to employment was preempted. It would make no sense to "allow[ ] an undocumented worker to skip through the priority scheme" to undertake "training [which] would only be available . . . because of [the worker's] undocumented status." *Tarango*, 117 Nev. at 453, 25 P.3d at 181.

Our opinion in *Tarango* clearly held that undocumented workers cannot obtain reemployment or vocational training pursuant to NRS 616C.530. But our opinion did not bar "compensatory benefits which award monetary relief." *Id.* at 448, 25 P.3d at 178. Far from holding those benefits preempted, we expressly affirmed an award of such benefits. *Id.* at 456-57, 25 P.3d at 183. That result was, and is, sound. IRCA makes it unlawful to knowingly employ an undocumented alien, but IRCA says nothing about paying an undocumented alien benefits that compensate for

---

[2]A state law may also be preempted if "congressional enactments so thoroughly occupy a legislative field, or touch a field in which the federal interest is so dominant, that Congress effectively leaves no room for states to regulate conduct in that field." *Renfroe*, 133 Nev. at 360, 398 P.3d at 906. In *Tarango*, we discussed Congress's "plenary power" over aliens, but we did not hold that Congress had preempted states from providing *any* benefits to aliens. *See Tarango*, 117 Nev. at 448-49, 25 P.3d at 178-79; *cf. Asylum Co. v. D.C. Dep't of Emp't Servs.*, 10 A.3d 619, 631 (D.C. 2010) (holding that IRCA does not preempt the field of workers' compensation schemes).

an injury. Therefore, there is no conflict with federal law when an insurer pays compensatory benefits. Furthermore, those benefits are not only available because of the worker's undocumented status; they are available to any worker, lawfully or unlawfully employed, "who is injured by accident arising out of and in the course of employment." *See* NRS 616C.440(1). Accordingly, we hold that undocumented aliens are not precluded from receiving disability benefits under Nevada's workers' compensation laws.

*The appeals officer's decision was based on substantial evidence*

ARM also argues that the appeals officer misapprehended the facts and that Ibanez is not in fact permanently and totally disabled. We decline to disturb the appeals officer's evaluation of the evidence. Although the record contained some evidence that might have tended to show Ibanez could work light duty, the appeals officer based his decision on other substantial evidence in the record, including professional medical evaluations. He specifically noted "the credible reporting of Dr. Cestkowski," who had opined, after a physical examination, that Ibanez was permanently disabled. We do not reweigh the evidence or revisit credibility determinations. *Lawson*, 126 Nev. at 571, 245 P.3d at 1178. Accordingly, the appeals officer's conclusion was not clear error or an abuse of discretion. Even if ARM's view of the evidence might have been a permissible one, the agency evaluated the evidence differently and came to a different conclusion. That conclusion, which is "closely related to the agency's view of the facts, [is] entitled to deference." *Montoya*, 109 Nev. at 1031-32, 862 P.2d at 1199.

## CONCLUSION

Nevada's workers' compensation statute clearly and unambiguously protects every person in the service of an employer, whether lawfully or unlawfully employed, including aliens. Although federal law prohibits employers from knowingly employing an undocumented alien, it does not prohibit insurers from compensating undocumented aliens for injuries they sustain while working. Accordingly, we affirm the judgment of the district court.

_____, J.
Stiglich

We concur:

_____, J.
Gibbons

_____, J.
Silver