# IN THE SUPREME COURT OF THE STATE OF NEVADA

KIMBERLY KLINE,
Appellant,
vs.
CITY OF RENO; AND CANNON
COCHRAN MANAGEMENT SERVICES,
INC., "CCMSI,"
Respondents.

No. 82608

FILED

AUG 11 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.[1]

Shortly after being involved in a non-industrial car accident, appellant Kimberly Kline was injured in a car accident while working for respondent City of Reno. Kline received treatment for back and neck pain and was diagnosed with acute lumbar radiculopathy, sprain of the lumbar spine, and acute pain in the lower back. The City's workers' compensation administrator, respondent Cannon Cochran Management Services, Inc. (CCMSI), accepted Kline's workers' compensation claim for a cervical strain. Kline's initial treating physician, Scott Hall, M.D., determined that Kline had reached maximum medical improvement (MMI), was stable with no ratable impairment, and released her to full duty with no restrictions. Based on this, CCMSI sent Kline a notice of intention to close her workers' compensation claim. An appeals officer reversed the closure (closure appeal). Relevant here, the appeals officer in the closure appeal considered

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

22-25186

the medical opinions of Dr. Hall and two other physicians who treated Kline—Dr. Bryan Hanson, D.C., and Lali Sekhon, M.D. Ultimately, the appeals officer gave more weight to Dr. Hanson's and Dr. Sekhon's reports, which opined, respectively, that there was a high probability within a medical degree of certainty that Kline's injuries were related to the recent industrial accident and that Kline "stated that she never had these arm symptoms before these accidents and although she may have had preexisting spondylosis, the accident probably exacerbated her underlying stenosis." Based on this, the appeals officer found that Kline was entitled to additional treatment, which Dr. Sekhon indicated included "a C4-5, C5-6 and C6-7 anterior cervical decompression and instrumentation fusion." The district court denied respondents' subsequent petition for judicial review, which the City did not appeal.

While the petition for judicial review was pending, Dr. Sekhon performed his recommended surgery, after which he determined that Kline had reached MMI and had a ratable impairment. He thus released her to full duty. Dr. Russell Anderson then conducted a permanent partial disability (PPD) evaluation and concluded that Kline has a 25% whole person impairment (WPI) from the cervical spine and that Kline had underlying cervical spine issues that pre-dated her industrial injury. Stating "[i]t is not logical to believe that these findings are related to the [industrial] car accident that she was involved in 6 months earlier," Dr. Anderson apportioned 75% of the impairment as non-industrial and 25% as industrial. Applying the apportionment to Kline's 25% WPI, Dr. Anderson rated Kline at a 6% WPI as related to the industrial work injury. CCMSI thus issued a 6% PPD award letter to Kline.

Kline appealed CCMSI's determination letter, and the appeals officer ordered a second PPD evaluation. In the second evaluation, Dr. James Jempsa found a 27% WPI and that apportionment was not necessary. Due to the discrepancy in apportionment, CCMSI sought another opinion from Jay Betz, M.D. Dr. Betz ultimately agreed with Dr. Anderson that a 6% WPI rating was appropriate, as Dr. Anderson's "conclusions [were] well supported by the medical record, known pathologies, AMA guides, and the Nevada Administrative Code." Dr. Betz also relied on Dr. Hall's earlier opinion.

CCMSI then offered Kline a 6% PPD award, which the hearing officer overturned. In respondents' later appeal to the appeals officer, Kline testified on her own behalf and Dr. Betz testified as an expert for respondents, reaffirming his conclusion that Kline had a 6% WPI as related to the industrial injury. Kline offered no expert witness to rebut Dr. Betz's testimony. The appeals officer ultimately found that CCMSI "properly offered [Kline] a 6% PPD award following apportionment of the 25% PPD award as 75% non-industrial and 25% industrial, based on Dr. Anderson's PPD evaluation and Dr. Betz's records review report." Kline subsequently petitioned for judicial review, which the district court denied.

As a threshold issue, Kline asserts that recent amendments to NRS 616C.490 apply to her claim. Those amendments apply only to claims open on the date of passage and approval, May 31, 2021. *See* 2021 Nev. Stat., ch. 245, §§ 11, 12 (S.B. 289). Here, the appeals officer found that Kline's claim had closed "as of the date of Dr. Jempsa's PPD evaluation on May 8, 2018," which Kline did not challenge in her petition for judicial review. Because Kline failed to challenge the claim closure date below, she waived any such argument regarding a different claim closure date. We

therefore necessarily apply the same version of NRS 616C.490 to her case as used by the appeals officer and district court. *See Old Aztec Mine, Inc. v. Brown,* 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (explaining that a party waives an argument by failing to raise it in the district court). And because she did not raise her argument that NRS 616C.490 applies retroactively until her reply brief, we decline to address that argument too. *See Phillips v. Mercer,* 94 Nev. 279, 283, 579 P.2d 174, 176 (1978) (holding that we need not consider issues raised for the first time in a reply brief). Having resolved these two preliminary issues, we move on to Kline's substantive challenges to the appeals officer's determination.

"On appeal from a district court order denying a petition for judicial review, this court reviews an appeals officer's decision in the same manner that the district court reviews the decision." *City of Reno v. Yturbide,* 135 Nev. 113, 115, 440 P.3d 32, 34 (2019). In doing so, "we evaluate the agency's decision for clear error or an arbitrary and capricious abuse of discretion." *Law Offices of Barry Levinson, P.C. v. Milko,* 124 Nev. 355, 362, 184 P.3d 378, 383 (2008). This court is confined to the record and cannot "reweigh the evidence or revisit an appeals officer's credibility determination." *Associated Risk Mgmt., Inc. v. Ibanez,* 136 Nev. 762, 764, 478 P.3d 372, 374 (2020) (quoting *City of Las Vegas v. Lawson,* 126 Nev. 567, 571, 245 P.3d 1175, 1178 (2010)) (further internal quotation marks omitted). Therefore, when evaluating an appeals officer's findings, this court gives those findings and conclusions deference, and they "will not be disturbed if they are supported by substantial evidence." *Id.* (internal quotation marks omitted). Although we review legal questions de novo, "an agency's conclusions of law which are closely related to the agency's view of the facts are entitled to deference and should not be disturbed if they are

supported by substantial evidence." *Jourdan v. SIIS*, 109 Nev. 497, 499, 853 P.2d 99, 101 (1993). "Substantial evidence is that quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Kline first argues that issue preclusion bars relitigating whether her injuries were caused by the industrial accident. And that the appeals officer thus should have found no apportionment was warranted because there was no prior ratable impairment if the injuries were caused by the industrial accident. We disagree.

The prior appeals officer's decision addressed the issue of claim closure and whether Kline proved that she had not reached MMI. That decision noted that "Dr. Hansen felt there was a high probability within a medical degree of certainty that the Claimant's injuries were related to the rear-end collision she had recently sustained," but that left open the question of whether the work-related collision *caused* her injuries. Moreover, the decision did not address the spinal fusion surgery, PPD evaluations by Dr. Anderson and Dr. Jempsa, or the additional records reviewed by Dr. Betz, all of which occurred after the previous decision. Thus, we conclude that issue preclusion does not apply here. *See Alcantara v. Wal-Mart Stores, Inc.*, 130 Nev. 252, 258, 321 P.3d 912, 916 (2014) (outlining the elements for issue preclusion); *Evans v. Celotex Corp.*, 238 Cal. Rptr. 259, 262 (Ct. App. 1987) (holding that issue preclusion was never intended to operate "to prevent a re-examination of the same question between the same parties where . . . facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants"), *cited favorably by Alcantara*, 130 Nev. at 262-63, 321 P.3d at 919); Restatement (Second) of Judgments § 27 (2022) ("If issues are

determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded.").

Next, Kline argues that, absent any documentation to establish the scope and nature of any pre-existing non-industrial impairment in her cervical spine, apportionment is not allowed. The applicable version of NRS 616C.490(9) (2017) provided that "if there is a previous disability . . . the percentage of disability for a subsequent injury must be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury." Where, as here, no rating evaluation of the previous injury exists, the NAC provides:

> 4. Except as otherwise provided in subsection 5, . . . *if no previous rating evaluation was performed*, the percentage of impairment for the previous injury or disease and the present industrial injury or occupational disease must be recalculated by using the *Guides*, as adopted by reference pursuant to NAC 616C.002. The apportionment must be determined by subtracting the percentage of impairment established for the previous injury or disease from the percentage of impairment established for the present industrial injury or occupational disease.

> 5. If precise information is not available, and the rating physician or chiropractor is unable to determine an apportionment using the *Guides* as set forth in subsection 4, an apportionment may be allowed if at least 50 percent of the total present impairment is due to a preexisting or intervening injury, disease or condition. The rating physician or chiropractor may base the apportionment upon X-rays, historical records and diagnoses made by physicians or chiropractors or records of treatment which confirm the prior impairment.

NAC 616C.490(4)-(5) (emphasis added). NAC 616C.490(6), in turn, provides additional guidance on apportionment where there is a pre-existing condition.[2] Specifically, NAC 616C.490(6) provides:

> If there are preexisting conditions, including, without limitation, degenerative arthritis, rheumatoid variants, congenital malformations or, for claims accepted under NRS 616C.180, mental or behavioral disorders, the apportionment must be supported by documentation concerning the scope and the nature of the impairment which existed before the industrial injury or the onset of disease.

*See also* NAC 616C.490(7) ("A rating physician or chiropractor shall always explain the underlying basis of the apportionment as specifically as possible by citing pertinent data in the health care records or other records."); NAC

---

[2]We reject Kline's argument that subsections 4 and 5 "apply to situations where a rating was done in another state or using another edition of the AMA Guides" because the plain, unambiguous text of the regulation also applies where "no previous rating evaluation was performed." NAC 616C.490(4); *Pawlik v. Shyang-Fenn Deng*, 134 Nev. 83, 85, 412 P.3d 68, 71 (2018) ("When the language of a statute is clear on its face, this court will not go beyond the statute's plain language." (quoting *J.E. Dunn Nw., Inc. v. Corus Constr. Venture, LLC*, 127 Nev. 72, 79, 249 P.3d 501, 505 (2011))); *City of N. Las Vegas v. Warburton*, 127 Nev. 682, 687, 262 P.3d 715, 718 (2011) (holding that "rules of statutory construction also apply to administrative regulations"). Thus, the text specifically contemplates the scenario present in this case. We further reject Kline's argument that applying subsections 5 and 6 conflicts with NRS 616C.490 because she does not cogently articulate how they conflict, and because the regulations are reasonable in carrying out this provision where, as here, there has been no previous rating evaluation. *See* NRS 616C.490(11) ("The Division may adopt . . . reasonable regulations to carry out the provisions of this section."); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (holding that we need not consider arguments not cogently argued).

616C.490(8) ("If no documentation exists pursuant to subsection 6 or 7, the impairment may not be apportioned.").

Here, substantial evidence supports the appeals officer's apportionment decision and Kline fails to show the decision violated the relevant statute and rules regarding apportionment. Dr. Betz, whom the appeals officer deemed credible, *see Desert Valley Constr. v. Hurley*, 120 Nev. 499, 502, 96 P.3d 739, 741 (2004) (holding that we will not reweigh witness credibility on appeal in a workers' compensation matter), presented uncontroverted testimony as to the nature and scope of the pre-existing impairment, stating that "the nature of the [pre-existing] condition is multilevel-significant spondylolisthesis or degenerative disc disease" and that the presence of osteophyte complexes in the MRI would have taken "years or decades" to develop. Dr. Betz also relied on the AMA Guides' framework for apportionment, discussing each requirement. And he testified that the present impairment was at least 50 percent due to Kline's pre-existing impairment, relying on documentation, including x-rays, MRIs, historical records and diagnoses, in determining that Kline had a prior impairment. *See Ransier v. SIIS*, 104 Nev. 742, 744 n.1, 766 P.2d 274, 275 n.1 (1988) (addressing NAC 616.490's predecessor regulation and holding that "the clause 'which existed before the industrial injury or the onset of the disease" "refers to the impairment and not the documentation;" and thus the regulation did "not require historical documentation, only documentation concerning the scope and nature of the impairment, which can come, as here, from examination at the time of the second injury" (internal quotation marks omitted)).[3] We thus conclude that the appeals

[3]*Ransier* analyzed NAC 616.650, which was repealed and replaced by NAC 616C.490, but the language remains the same.

officer committed no clear error or an arbitrary and capricious abuse of discretion in determining that Dr. Betz and Dr. Anderson established the underlying basis for apportionment as required by NAC 616C.490(5)-(7), that apportionment was warranted, or in determining the ultimate apportionment figure. We, therefore,

ORDER the judgment of the district court AFFIRMED.[4]

_____, C.J.
Parraguirre

_____, J.          _____Sr.J.
Silver                                Gibbons


cc:     Hon. Connie J. Steinheimer, District Judge
        Jonathan L. Andrews, Settlement Judge
        The Law Firm of Herb Santos, Jr.
        McDonald Carano LLP/Reno
        Washoe District Court Clerk

---

[4]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.